AO 472 (Rev. 11/16) Order of Detention Pending Trial

United States District Court
Southern District of Texas

**ENTERED**
August 08, 2017
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
for the

Southern District of Texas

| | |
|---|---|
| United States of America ) | |
| v. ) | |
| ) | Case No. 4:17-CR-431 |
| Stephen Lynch ) | |
| *Defendant* ) | |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

☒ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or
☒ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:

  ☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):

   ☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**

   ☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**

   ☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**

   ☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**

   ☐ **(e)** any felony that is not otherwise a crime of violence but involves:
   **(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921);
   **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**

  ☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**

  ☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**

  ☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the

defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

☒ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:

☐ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);

☐ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;

☐ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

☐ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**

☒ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

☐ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

☒ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis. *(Part III need not be completed.)*

**OR**

☐ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted.

**Part III - Analysis and Statement of the Reasons for Detention**

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

☒ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

☒ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

In addition to any findings made on the record at the hearing, the reasons for detention include the following:

☒ Weight of evidence against the defendant is strong
☒ Subject to lengthy period of incarceration if convicted
☐ Prior criminal history
☐ Participation in criminal activity while on probation, parole, or supervision
☐ History of violence or use of weapons
☐ History of alcohol or substance abuse
☐ Lack of stable employment
☐ Lack of stable residence
☐ Lack of financially responsible sureties

- ☐ Lack of significant community or family ties to this district
- ☐ Significant family or other ties outside the United States
- ☐ Lack of legal status in the United States
- ☐ Subject to removal or deportation after serving any period of incarceration
- ☐ Prior failure to appear in court as ordered
- ☐ Prior attempt(s) to evade law enforcement
- ☐ Use of alias(es) or false documents
- ☐ Background information unknown or unverified
- ☐ Prior violations of probation, parole, or supervised release

OTHER REASONS OR FURTHER EXPLANATION:
Evidence Presented


Defendant's Background

Pretrial Services ("PTS") interviewed the Defendant and summarized his background information. Defendant is 42 years old. His parents live in Georgetown, Texas. He was living in Kingwood with his wife of 13 years and two children, ages 12 and 5, until the time of his arrest. Defendant maintains close contact with his family.

Defendant obtained a bachelor's degree in computer science in 2000 from Sam Houston State University. His employment has been in the information technology arena. For the past 6 years, he was employed with Insperity, Inc., in Kingwood, Texas.

Defendant has no criminal history.

Defendant has no history of mental health treatment, substance abuse, or substance abuse treatment.

Based on the information Defendant provided to PTS, they recommended detention.


Evidence Regarding the Pending Complaint

The Defendant is charges in 3 counts with: sexual exploitation of children, possession of child pornography, and destruction of property.

The Government called a Special Agent ("SA") with the Department of Homeland Security Investigations ("HSI"). He is familiar with the indictment in this case and is the case agent involved in the investigation and charges leading to Defendant's arrest. The Court finds SA's testimony to be credible. He testified to the following:

SA was ultimately referred this case based on a lead from the National Center of Missing and Exploited Children ("NCMEC") about an abused child. NCMEC serves as a repository for child pornography gathered in criminal investigations across the country. NCMEC tries to identify the children to give these victims a chance to go to court. NCMEC keeps all the pictures it receives in a database. Photographic images of a young girl were circulating on the internet. These photos had been submitted to NCMEC in unrelated cases involving child pornography. NCMEC had received photos of this child more than 128 times, meaning they were submitted in connection with 128 different cases. The photos included pictures of the child's face, playing on a playground, and pornography, displaying the child's genitals in a lascivious manner.

The photos were given to the Smithsonian Institute to investigate the playground. It identified the trees in the photos and the playground equipment. Based on both, the Smithsonian was able to narrow the location of the photos to a playground

in Kingwood, Texas.

Once SA received the images, his team canvassed the neighborhood for schools and daycare centers to identify the child. One daycare worker identified the child. SA looked up the child's mother's Facebook page and was able to confirm the identity of the child. SA identified a residence in Kingwood as a possible address for this child's family.

At about 9:00 p.m., SA approached the residence to see if the family lived there and if a suspect lived at the residence. First, SA spoke to the child's mother on the front porch. Eventually, he also spoke to the Defendant, in SA's vehicle.

Defendant told SA that he had a computer related degree and worked in the computer field. SA showed Defendant some of the images and explained the nature of the investigation. Specifically, he informed Defendant that the images were found on a photo sharing site and on the dark website. At first, Defendant claimed ignorance, and then admitted he knew what SA was talking about, but that he did not use the software to access the dark website.

SA showed Defendant the images of the child's face. Defendant identified the child (Minor Victim 1 "MV1"). The child was 3 years old at the time the pictures were taken. Defendant admitted that he has taken some of the pictures in the park. He admitted that he had taken some of the pictures in the residence. SA asked Defendant if he had taken pornographic pictures of MV1, but he said that he had not. SA did not show Defendant the nude photos of MV1. Some of the pictures were taken in a "series," which means that the pictures of the child start out fully clothed. The victim poses in a number of photos, removing more and more clothing until the child is fully or partially nude. Defendant admitted to taking photos that were the first of a series. In one series, MV1 was wearing a black long sleeve shirt with a gold heart. First, she is facing the camera on her back, lying on a blue blanket. In other pictures in that series, MV1 ends up nude from the waist down. She is facing the camera. She is facing away from the camera. She is in the bathroom with a close up view of her vagina. She is urinating. In that picture, she is still wearing the same black shirt. The series photos of MV1 had a watermark on them "Katie Kate." Defendant had told SA that MV1's nick name was KK.

Defendant said that he believed the pictures of MV1 were taken off his flicker website. The agents accessed the flicker site but did not find the photos of MV1.

SA asked to search the house. Defendant had already identified items in the pictures that were in the house and SA wanted to preserve them. In addition, SA wanted to image Defendant's electronics. Defendant refused to consent. SA told Defendant he would get a search warrant and be back.

At about 11:00 p.m., SA left the residence with another agent so that he could prepare the search warrant. Other agents were left at the residence to secure it. SA received a text and phone call that there was confusion at the residence. At some point, Defendant was able to enter the residence and started to access his laptop in the master bedroom. The agents told him to stop accessing the computer and he needed to leave the residence.  They took him outside until they obtained the search warrant at about 2:00 a.m.

They conducted the search and found a number of electronics. Their preview did not find anything pornographic. They collected things from around the house. Suddenly, they smelled plastic burning. The source of the smell was 8 thumb drives that had been put in the microwave and melted. The team finished executing the search warrant at about 8:00 a.m. The team did not arrest Defendant at that time. SA told him that just because they were leaving did not mean the case was over. He said that they would be back to arrest the Defendant after they analyzed the electronics. SA took the seized items to the office and logged them in as evidence. That afternoon, he obtained an arrest warrant for Defendant based on the destruction of the evidence in the microwave. When they went to execute the warrant, Defendant was not at his workplace. His car was there. SA searched the office building with the management team.

Shortly afterwards, SA found out that, after the agents left his house, Defendant went to his office. He parked his car and went inside briefly. He then rented a car, went to the bank and withdrew $4000, and left the area.

MV1 was forensically interviewed. She identified the photos that Defendant took of her. She said that she was rewarded with chocolate for taking the pictures. They showed her only the photos in which she was fully clothed that started the

series.

The forensic examination of the Defendant's electronics is ongoing. So far, they have recovered child pornography on three laptops. For example, there was a video of a nude minor female child, engaging in oral sex with a nude male. There were 3 videos that were similar in nature. The child in each video was between 5 and 7 years old. MV1 is not on the videos. In addition, there were two images of MV1 on the laptop where she is nude. In one, her genitals are displayed in a lascivious manner. Only Defendant used these laptops; his wife said that she did not use them. The laptop that had the picture of MV1 was in the living room, connected to the home network, and connected to an onion router which is used to access the dark website.

On June 15, SA obtained a criminal complaint regarding Defendant's production of child pornography of MV1. Over that weekend, Defendant's wife said she heard from him and he was in Kansas. SA could not confirm it.

On June 16, SA got in contact with Defendant's father. He drove to Georgetown to meet with the dad in person. Between June 16 and 17, SA spoke to the dad repeatedly. On Sunday, the dad reported to SA that he had met with his son in Georgetown, at a parking lot of a local bar. He reported that his son wanted to hire an attorney before he spoke to the agents. SA told the Defendant's father that he needed to contact the agents immediately if he heard from Defendant again so he would not be implicated in harboring a fugitive.

At 4:00 a.m., SA received a phone call from the Georgetown police department. SA had previously informed them that there was an active warrant out for Defendant's arrest and he had made suicidal statements to his father. The police said that Defendant's rental car was parked outside his parent's residence. SA called Defendant's father. He said that Defendant was there, asleep. The police placed Defendant under arrest.

SA identified the Defendant in the courtroom.

On cross examination, SA admitted that he does not know how MV1's pictures got on the photo sharing site or the dark website. SA has not yet recovered the original photos. Defendant admitted that he took the first in a series of photos and MV1 said that her dad took the picture of her. None of the photos with MV1 showed sexual contact. The photos were pornographic because her genitals were the focal point of the photographs.

When SA arrived with the search warrant at 2:00 a.m., the items were in the microwave melting. He suspects Defendant put them in there, but SA has no evidence that it was Defendant.

MV1 was shown the pictures from NCMEC. She did not recall some of them. She said that she wanted to take the pictures because she wanted the chocolate. SA has not found any more recent photos of MV1 that are pornographic.

On redirect, SA testified that Defendant is a danger to the community. He admitted to taking the pictures that were part of a series. MV1 identified her dad as taking the first in the series. Two pornographic pictures of MV1 were found on his laptop. Other files were encrypted, making review slower.

SA testified regarding whether Defendant is a flight risk. SA testified that, after a search warrant was executed on his residence, Defendant went to his office, left his car at work, rented another car, took money out of the bank and left for Kansas. He never turned himself in.


Order

This is a presumption case. The Government is entitled to a presumption that the Defendant is a flight risk and a danger to the community. The Defendant did not rebut either presumption.

The Court finds that the Government proved by clear and convincing evidence that Defendant is a danger to minor children. He lied to the agents about his computer knowledge. He lied to the agents about taking pornographic pictures of

MV1. He admitted that he took the first in a series of pictures, which ended up with the child in a pornographic pose. Pornographic pictures of MV1 were found on his computer, in addition to the ones found on the dark web and photo sharing site. Other evidence of child pornography was also found on his laptop.

The Government has proved by a preponderance of the evidence that Defendant is a flight risk. Once aware of the investigation, Defendant fled the city and hid from SA. He rented a car and took $4000 from the bank so that he could travel without being detected. Once aware of the arrest warrant, he failed to turn himself in and continued to hide from the agents. He was found at his parent's house, after his father had been warned about harboring him.

## Part IV - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant must be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date:         08/07/2017                              *Dena Palermo*
                                                      United States Magistrate Judge